People v Briggs (2024 NY Slip Op 24214)

[*1]

People v Briggs

2024 NY Slip Op 24214

Decided on August 8, 2024

Supreme Court, New York County

Drysdale, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on August 8, 2024
Supreme Court, New York County

The People of the State of New York,

against
Peter Briggs, Defendant.

IND-70996-23

For the People: Assistant District Attorney Bradley Barbour, Of Counsel
New York County District Attorney's Office 
For the Defendant: Troy Griffith, Esq. 
Law Office of Troy S. Griffith

Althea E.M. Drysdale, J.

This consolidated indictment charges the defendant with one count of Robbery in the First Degree pursuant to PL § 160.15(3), one count of Robbery in the First Degree pursuant to PL § 160.15(4), one count of Robbery in the Second Degree pursuant to PL § 160.10(1), and one count of Criminal Possession of a Weapon in the Third Degree pursuant to PL § 265.02(1) in relation to an incident that allegedly occurred on December 31, 2022. The defendant is further charged with one count of Attempted Assault in the First Degree pursuant to PL § 110/120.10(1), one count of Assault in the Second Degree pursuant to PL § 120.05(2), one count of Assault in the Second Degree pursuant to PL § 120.05(12), one count of Stalking in the First Degree pursuant to PL § 120.60(1), one count of Criminal Possession of a Weapon in the Third Degree pursuant to PL § 265.02(1), one count of Attempted Assault in the Second Degree pursuant to PL § 110/120.05(2), one count of Stalking in the Second Degree pursuant to PL § 120.55(1), and one count of Acting in a Manner Injurious to a Child pursuant to PL § 260.10(1) in relation to an incident that allegedly occurred on February 13, 2023.
As part of their case-in-chief, the People seek to introduce evidence of an identification of the defendant made by a law enforcement official based on his prior interactions with the defendant. The defendant opposes, arguing that the law enforcement official who identified the defendant in video surveillance lacked sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful, and, additionally and alternatively, that the jury does not need the witness' assistance in identifying the defendant in the video surveillance.
A Mosley hearing was held before this Court, at which time the People introduced testimony from Police Officer Leonell Martinez Paula, Shield #19844 of the 28th Precinct, whom the Court finds to be credible in all respects. The People further introduced body-worn camera of the defendant's arrest as well as video surveillance and still images generated in relation to the incident that occurred on [*2]December 31, 2022. Based on the evidence adduced at the hearing, the Court makes the following findings of fact and conclusions of law.
 Findings of Fact
Police Officer Martinez Paula testified that he has worked with the New York City Police Department ("NYPD") for five years, four of which he spent working within the confines of the 28th Precinct where these incidents allegedly occurred, and one year with the Police Pension Fund.
On February 14, 2023 at approximately 6:00pm in the vicinity of 7th Avenue in the County and State of New York, Officer Martinez Paula, along with Officer Cavaleri responded to a 911 call in relation to a stabbing that had occurred the day before. Upon arriving at the location from where the call was placed, Officer Martinez Paula spoke with the complaining witness, who stated in substance that he had just seen an individual whom he had observed stab him the day before. The officers placed the complainant in their patrol car and began canvassing the area. The complainant then pointed out the defendant as the individual who had stabbed him. Officer Martinez Paula was in the car with the complainant for approximately ten minutes.
Upon observing the defendant standing on the sidewalk, Officer Martinez Paula placed the defendant in handcuffs and placed him under arrest. Officer Martinez Paula stated that he spent approximately five minutes outside on the street with the defendant while placing him under arrest and observed that, at the time of his arrest, the area was well-lit with streetlights.
The defendant was then transported to the 28th Precinct by other officers while Officer Martinez Paula brought the complainant back to the precinct. Officer Martinez Paula then spent two hours processing arrest paperwork with the defendant while the defendant sat a few feet away from him. During that time, he also took photographs of the defendant and fingerprinted him. 
Based on the time Officer Martinez Paula spent with the defendant, Officer Martinez Paula observed that the defendant was approximately six feet tall, black, bald, and had a beard. He further observed that the defendant had a teardrop tattoo on the right side of his face, as well as a star tattoo on his ear, and other distinctive tattoos on his neck and hands. 
Following the defendant's arrest on February 14, 2023, on February 15, 2023, Detective Nelson Gomez of the 28th Precinct showed Police Officer Martinez Paula photographs of a suspect in relation to another open investigation regarding an incident that allegedly occurred on December 31, 2022. While reviewing several still images taken from video surveillance from an incident that allegedly occurred on a prior date, Officer Martinez Paula identified the defendant as the individual depicted in the images. Specifically, Officer Martinez Paula was able to identify the defendant as the individual depicted in the video surveillance stills based on several unique tattoos, as well as his height, weight, and other physical features that he personally observed during the three hours he spent in close contact with the defendant while he was processing the February 14, 2023 arrest. Officer Martinez Paula also noted that the individual depicted in the video surveillance images was wearing a black coat with black fur and distinctive lines on the back of the coat, which is what the defendant was wearing when he was arrested the day before. The defendant was subsequently arrested and charged in relation to that incident, which is now contained within this consolidated indictment.

Conclusions of Law
In People v. Mosley, 2024 NY Slip Op 02125, (NY. Ct. App. April 23, 2024), the Court of Appeals ruled that a person who is not an eyewitness to a crime may offer opinion testimony to a jury as to the [*3]defendant's identity as an individual depicted in a photo or video, so long as there is proof that "the witness is sufficiently familiar with the defendant that their testimony would be reliable, and there is reason to believe the jury might require such assistance in making its independent assessment." Id. at 1. In order to establish that such criteria has been met, the Court "court should inquire as to the basis of the witness's familiarity outside the presence of the jury in a separate hearing or voir dire." Id. at 3. 
The Court of Appeals "adopt[ed] a totality of the circumstances test, which preserves the discretion of the trial courtthe court that, being closest to the facts of the case, is in the best position to make these evidentiary decisions." Id. at 2. "Whether the probative value of such identification testimony outweighs these drawbacks is a decision committed to the sound discretion of the trial court, and reviewable by [Appellate Courts] for abuse of discretion. [ ] [T]he relevant question is whether the proffered testimony serves to aid the jury in making an independent assessment regarding whether the person in the surveillance footage was indeed the defendant. To answer in the affirmative, there must be some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph [or video] than is the jury." Id. at 2, (internal citations and quotations omitted). The burden of proof for this hearing lies with the party looking to elicit the testimony at issue, in this case, the People. Id. at 3.
Mosley inquiries are intended to safeguard against several issues. First, they seek to ensure that the witness that is providing testimony regarding the defendant's identity is sufficiently familiar with the defendant so that their identification testimony is derived from a reliable and substantive source of knowledge. Id. at 1. Second, they weigh the probative value of the testimony against the possible prejudice of making the jury aware of the defendant's prior interactions with law enforcement officials, even when the facts surrounding those interactions are omitted or otherwise sanitized. Id. at 4. Finally, they ensure that the testimony that will be elicited will actually be needed by the jury in that it will aid in their evaluation of the evidence, as opposed to invading their provenance as the ultimate finders of fact. Id. at 3 and 5.
I. Did the witness have sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful?
First, the Court will determine whether Police Officer Martinez Paula had sufficient prior contacts with the defendant in order to achieve a level of familiarity with the defendant's appearance that would render his opinion helpful. In determining whether the witness' opinion comes from a place of sufficient knowledge, Courts are permitted to consider (i) the witness's general level of familiarity with the defendant's appearance, (ii) whether the witness was familiar with the defendant's appearance at the time the surveillance footage was captured or photograph was taken, (iii) the witness's familiarity with the defendant's customary manner of dress or clothing on the day of the surveillance footage, (iv) whether the witness references a specific trait the defendant has, such as a distinctive gait, scar, or tattoo, and importantly, (v) whether they identify that trait in the surveillance footage or photograph that the People seek to presented at trial. Id. at 4.
Here, Police Officer Martinez Paula spent over two hours in very close proximity to the defendant: first when arresting him on the street and again while processing his arrest at the precinct. During those times, Officer Martinez Paula stated that the lighting conditions were favorable and that the defendant was in a position that allowed him to clearly view his physical appearance, especially throughout the two hours that the defendant sat approximately two feet away from the officer while he filled out arrest paperwork, took the defendant's arrest photograph, and fingerprinted him. Officer Martinez Paula was able to describe, with sufficient particularity, unique details regarding the defendant's physical features, especially in regard to a number of tattoos on different areas of the [*4]defendant's body.
Based on the facts elicited throughout that hearing, this Court finds that the witness has had sufficient contact with the defendant to achieve a level of familiarity that renders his lay opinion helpful. Therefore, this Court will move onto the second prong of the examination, whether jury will need the witness' assistance in identifying the defendant in the video surveillance images.
II. Does the jury need the witness' assistance in identifying the defendant in the video surveillance?
Since the Court has determined that the witness has had sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful, the Court will now determine whether the jury will need the witness' assistance in identifying the defendant in the video surveillance images.
In determining whether the jury would need the witness' assistance in identifying the defendant in the image, Courts are permitted to consider: (i) whether the defendant's appearance changed between the time of the surveillance footage and the trial or whether the defendant disguised himself in the surveillance footage (i.e. uncharacteristic facial hair, facial coverings, etc.), and (ii) the quality of the surveillance footage and the extent to which the subject is clearly captured in the frame. "Where an image is clear enoughthat is, not so crystal clear that the jury could identify a person as capably as any witness, and not so obscure that no witness could readily identify the individualthis factor may weigh in favor of admission." Id. at 5.
Here, based on the lesser quality of the video surveillance images, the Court finds that Police Officer Martinez Paula's opinion testimony would be helpful to the jury in determining the identity of the individual depicted in the video surveillance, because Officer Martinez Paula has "personal knowledge of a unique feature of the defendant's appearance that is not obvious in Court but which the witness can point to in the video." People v. Mosley, 2024 NY Slip Op 02125, concurrence at 3 (NY. Ct. App. April 23, 2024) (Rivera, J. concurring). Additionally, the People note that the defendant's close-cut beard at the time of the alleged incidents is now significantly longer and not only alters his physical appearance, but also covers several of the defendant's notable tattoos. Therefore, this Court will allow the witness to provide testimony as to the defendant's identity as the person depicted in the video surveillance still images.

Jury Instructions Relating to the Officer's Opinion Testimony
Finally, the Court intends to provide cautionary instructions, both at the time of the testimony and during the final charge, explaining to the jury that lay non-eyewitness identification testimony is mere opinion testimony that they may choose to accept or reject, and reminding the jurors that, because they are the ultimate finders of fact in this case, it is their opinion as to whom is depicted in the surveillance footage that matters.[FN1]

This constitutes the Decision and Order of the Court.
Dated: August 8, 2024
New York, New York
Althea E.M. Drysdale, A.J.S.C.

Footnotes

Footnote 1: Proposed Jury Instruction Language from the New York State Criminal Jury Instructions(Pub. May 2024)

Cautionary Instruction at the Time of the Testimony: Members of Jury, the witness's identification of the defendant in the (specify: e.g. video / photograph) is the opinion of that witness and you may choose to accept or reject that opinion. Remember, you are the finders of fact and it is your opinion as to whether the defendant is depicted in the (specify: e.g. video / photograph) that matters.

Instruction at the Time of the Final Instructions to the Jury: The witness's identification of the defendant in the (specify: e.g., video / photograph) is the opinion of that witness and you may choose to accept or reject that opinion. In deciding whether to accept or reject the opinion you may consider whether the witness had a sufficient familiarity with the defendant to be able to make an identification and whether the (specify: e.g., video / photograph) presented a sufficient image that would enable an identification by a person who had sufficient familiarity with the defendant. Remember, you are the finders of fact and it is your opinion as to whether the defendant is depicted in the (specify: e.g., video / photograph) that matters.